Determination of respondent New York City Housing Authority (NYCHA), dated January 17, 2012, which terminated *579 petitioner’s public housing tenancy on the ground of nondesirability, unanimously modified, on the law, the penalty of termination vacated, the matter remanded to respondents for imposition of a lesser penalty, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Arlene E Bluth, J.], entered December 20, 2012), otherwise disposed of by confirming the remainder of the determination, without costs.
On October 13, 2009, petitioner visited the management office for Marble Hill Houses, the public housing complex where she resides and which is managed by NYCHA. Petitioner came to the office to seek a rent adjustment, which she believed was warranted by the recent termination of disability assistance that had been granted her after a difficult pregnancy. Petitioner spoke with Celinette Severiano, a resident services associate, and presented some documentation which petitioner maintained established the loss of benefits. Severiano pointed out to petitioner that the documentation was inconclusive on the issue of whether the disability assistance had in fact been terminated. Severiano advised petitioner that the documentation was insufficient and that she would need to come back with more paperwork.
According to Severiano’s testimony at the administrative hearing, petitioner began to yell and curse at her. Describing the atmosphere in her office as “hostile,” Severiano decided to leave for the reception area, where her assistant manager was. To do so, she was required to move petitioner’s baby stroller (holding petitioner’s youngest daughter) out of the way, since it was blocking the door. Petitioner followed Severiano to the reception area, accusing Severiano of pushing her stroller in disregard of her child’s safety. According to Severiano, she was concerned enough about petitioner’s behavior to call the police. However, before she could dial 911, petitioner grabbed the telephone that Severiano intended to use and threw it towards her. Severiano moved and was not struck. Petitioner was then removed from the reception area by several other NYCHA workers, including the office manager, Simon Mukkatt. Petitioner was placed in an office, and the entrance to the reception area was locked so petitioner could not re-enter it. According to Severiano, petitioner eventually left the premises, making a threatening remark. Severiano called the police and filed a police report, but petitioner was not arrested. Severiano was eventually transferred to a different office for what her superiors advised her was her “own safety and protection.”
By notice dated October 15, 2009, NYCHA informed petitioner *580 that it was considering termination of her lease based on the incident of October 13, 2009. The notice stated that before any action was taken she would have an opportunity to discuss the incident at a meeting in the management office on October 23, 2009, or another time more convenient to petitioner. It is unclear from the record whether the notice was mailed to petitioner or personally delivered to her at her apartment. However, on October 16, according to Mukkatt, petitioner returned to the management office, “because we filed a termination notice [against] her.” Mukkatt testified that petitioner came to the office with further information concerning her income, but that when he brought up the possibility of termination, she became outraged and began cursing at him. Before she left she disparaged what she perceived to be his country of origin.
NYCHA initiated charges which sought to terminate petitioner’s tenancy based on nondesirability as a result of, inter alia, the October 13, 2009 and October 16, 2009 incidents, and for breaching NYCHA’s rules and regulations. A hearing comprised of five separate sessions took place over the course of approximately IV2 years. Petitioner did not testify; however, her counsel argued in a closing statement that termination of petitioner’s tenancy was not an appropriate penalty inasmuch as petitioner is a single mother with a disabled child, a victim of domestic violence, and a lifelong public housing tenant. Counsel further maintained that while petitioner’s conduct was not “fully excusable,” it was “understandable” given petitioner’s contention that Severiano allegedly “jarred her baby carriage or pushed it on the way out of the room.”
The Hearing Officer upheld the charges at issue and imposed termination as a penalty, stating that while she had considered the mitigating circumstances, they were “insufficient to overcome the risk the tenant poses to the safety of NYCHA employees.” Petitioner commenced this article 78 proceeding seeking to annul NYCHA’s determination. Supreme Court, pursuant to CPLR 7804 (g), transferred this matter to this Court to determine whether NYCHA’s determination is supported by substantial evidence.
“In CPLR article 78 proceedings to review determinations of administrative tribunals, the standard of review for the Appellate Divisions ... is whether there was substantial evidence to support the [administrative determination]” (Matter of Wilson v City of White Plains, 95 NY2d 783, 784-785 [2000]). Substantial evidence is less than a preponderance of the evidence, and “means such relevant proof as a reasonable mind may accept as *581 adequate to support a conclusion or ultimate fact” by “its solid nature and ability to inspire confidence, [which] does not rise from bare surmise, conjecture, speculation or rumor” (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]).
Pursuant to this standard, the evidence supporting the charges was substantial, considering that petitioner’s lease expressly prohibited her from engaging in violent activity on and off the development, and required her to do everything necessary to permit NYCHA to comply with applicable regulations. Further, the testimony of Severiano, Mukkatt and another NYCHA employee who witnessed petitioner’s first outburst, was uncontested and accepted as credible by the Hearing Officer, a finding we are without power to disturb (see Matter of Wooten v Finkle, 285 AD2d 407, 408 [1st Dept 2001] [“the decision by an Administrative Hearing Officer to credit the testimony of a given witness is largely unreviewable by the courts” (internal quotation marks omitted)]).
We further reject petitioner’s argument that the administrative determination should be vacated because NYCHA violated its own procedures. Petitioner argues that NYCHA failed to follow its management manual because (1) before even considering termination it did not attempt to address with her the underlying problem; (2) it did not seek to pursue an alternative solution other than termination; (3) it did not adhere to the requirement that, when termination of tenancy is being considered, NYCHA “must first interview the tenant in order to discuss the problem(s) which may lead to termination of tenancy, seek to ascertain the facts involved and, when appropriate, try to assist the tenant by securing outside help”; (4) it did not fully document all of these steps in petitioner’s file; and (5) the Hearing' Officer did not consider mitigating circumstances in imposing a penalty.
The first two arguments overlook the specific nature of the offending activity here. The two incidents on October 13 and October 16, 2009 demonstrated that petitioner has a volatile temper which has the potential to escalate rapidly from verbal abuse to physical confrontation. This is not the type of condition which is readily amenable to solutions that would ensure the safety of those who might find themselves at odds with petitioner. In any event, when Mukkatt discussed termination with petitioner on October 16, 2009, her outburst made clear that she had no interest in curing or resolving the offensive behavior. Certainly NYCHA is not required to engage in intervention efforts that are highly likely to be futile.
*582 As for petitioner’s contention that she was not afforded an interview before formal termination proceedings were initiated, she failed to raise this specific objection before the Hearing Officer, making review inappropriate (see Matter of Payano v Berlin, 95 AD3d 767 [1st Dept 2012]). Indeed, petitioner presented no evidence regarding when she received the October 15 notice, leaving uncontested Mukkatt’s testimony that she came in on October 16 in response to it. Contradicting petitioner’s assertion that NYCHA failed to document the pre-termination steps it took, the record includes notes taken by NYCHA managers contemporaneously with the two incidents at issue, describing in detail the encounters with petitioner. Finally, there is no question that the Hearing Officer discussed mitigation in her decision.
Notwithstanding the foregoing, we find that termination of petitioner’s tenancy, is, based on the reviewable facts in this record, a penalty that is shocking to the conscience and that must be vacated. We have found this to be so in similar cases of tenants engaging in fits of rage targeted at NYCHA employees, where the conduct was isolated or specifically related to circumstances that gave some explanation for the behavior. For example, in Matter of Winn v Brown (226 AD2d 191 [1st Dept 1996]), this Court found that, while NYCHA’s determination of nondesirability was supported by substantial evidence of the petitioner’s actions, which “includ[ed] screaming profanities, racial epithets and making threats to respondent’s employees,” the termination of the petitioner’s tenancy was shocking to the conscience given that the incidents in question occurred when the tenant was having difficulty securing a transfer despite threats being made against the life of her son. In Matter of Spand v Franco (242 AD2d 210, 210 [1st Dept 1997], lv denied 92 NY2d 802 [1998]), this Court remanded to NYCHA for imposition of a lesser penalty where the tenant engaged in conduct that was “serious” and “appropriately condemned,” but eviction was disproportionate because the incident was isolated, the tenant was the mother of three small children and there was no evidence of other problems which posed a risk to other people or property. Even where a tenant “accosted” a NYCHA representative, termination was considered too harsh because the incident was isolated and because, like here, the target of the tenant’s wrath was not seriously injured (Matter of Peoples v New York City Hous. Auth., 281 AD2d 259, 260 [1st Dept 2001]).
On the record before us, the behavior described by NYCHA as undesirable can fairly be characterized as isolated. Although *583 there were two separate incidents, they occurred within three days of each other and were both related to petitioner’s effort to secure a rent reduction. Further, none of the NYCHA employees who were targeted by petitioner’s rage was physically injured. We recognize that one of the charges leveled by NYCHA against petitioner was predicated on a felony conviction for robbery in connection with an incident on or near development grounds in April 2006, in which she apparently physically assaulted another person. However, the Hearing Officer dismissed that charge because, according to NYCHA rules, once five years pass after the completion of a criminal sentence, the conviction cannot form the basis of regulatory charges. Accordingly, it would not be appropriate for us to consider the conviction in determining whether the penalty was appropriate.
Further, the incidents occurred under stressful conditions for petitioner. When the incident occurred, petitioner had recently lost a portion of her income and was having difficulty receiving immediate assurances that her rent would be commensurately adjusted. In Peoples, the tenant’s “considerable frustration” with a NYCHA representative’s refusal to acknowledge the condition of her apartment was a factor in this Court’s decision to vacate her termination (281 AD2d at 260). In addition, the escalation in petitioner’s behavior was apparently related to Severiano’s pushing petitioner’s baby carriage out of the way. While there is no reason to question Severiano’s testimony that she merely nudged the carriage out of the doorframe, it would not be surprising under the circumstances if this increased petitioner’s stress level.
Finally, we have in the past found a tenant’s need to care for children or disabled persons to be a factor mitigating against eviction (see Matter of Vazquez v New York City Hous. Auth. [Robert Fulton Houses], 57 AD3d 360 [1st Dept 2008]; Matter of Williams v Franco, 262 AD2d 45 [1st Dept 1999]). Petitioner is the single mother of two young children, one of whom suffers from a developmental disability and has needed medical attention since her birth, and has been a victim of domestic violence. Taken together with the isolated nature of the incidents in question and the circumstances surrounding them, this factor certainly militates in favor of a lesser penalty. Concur — Mazzarelli, J.E,. Andrias, DeGrasse, Freedman and Gische, JJ.